This is an appeal from a judgment in favor of the defendant, rendered upon the verdict of a jury. The case has been twice tried and twice appealed. See First Nat. Bank v. Burdick, 51 N.D. 508, 200 N.W. 44. The action is upon a promissory note executed by the defendant Emma C. Burdick, payable to the plaintiff and given in renewal of an obligation for a larger amount which she had undertaken as an accommodation to her husband, U.L. Burdick. The original obligation was incurred on January 13, 1920, in the sum of $5,000 and the note in suit for $2,900 is dated June 2, 1921, due *Page 435 
December 2, 1921. Upon the former appeal the pleadings and record were construed to raise an issue as to whether or not, as a result of a transaction between the accommodated person and the plaintiff bank, about the middle of May, 1920, the latter took several thousand dollars worth of notes from the accommodated party with the understanding that they would be accepted in satisfaction and payment of the original note. The only question considered on that appeal was whether there was substantial evidence in the record to warrant the jury in finding that an agreement was in fact made and executed between the plaintiff and the accommodated party, resulting in the discharge of the defendant from liability on the note. This court was of the opinion that the evidence upon the former trial was insufficient to support the verdict and ordered a new trial. Again, upon this appeal, the pivotal question is the sufficiency of the evidence. The principal witness for the defendant was the accommodated party. To better understand the issue tried, and the testimony, it may be well to make a brief preliminary statement of the situation.
The accommodated party, U.L. Burdick, had for some time been operating a stock ranch in the vicinity of Williston, and in his operations had had occasion to borrow considerable money from the plaintiff bank. Prior to the transactions involved here, he had borrowed to the extent of the limit the bank was permitted to loan to one individual. He had arranged to purchase some cattle in South St. Paul, the money to be obtained from a bank in South St. Paul, but the loan was to be effected through the plaintiff bank. In carrying out these arrangements, the defendant, the wife of U.L. Burdick, gave to the plaintiff, for her husband's accommodation, the $5,000 note. Burdick purchased cattle and resold some of them, taking notes from the purchasers. These notes and other notes he had in his possession and was holding them as a means of protection to his wife on account of the accommodation note she had given to the bank. It appears that the accommodation note was causing Burdick some trouble and that about the middle of May, 1920, he negotiated with the plaintiff, through Davidson, one of its officers, looking toward the elimination of this note as a source of trouble. The principal question for consideration here is whether or not in these negotiations there was an accord and satisfaction discharging Mrs. Burdick. *Page 436 
Concerning this transaction Burdick testified in substance as follows: That, in response to his proposal for the surrender by the plaintiff of the defendant's note, Davidson in the first conversation suggested that, if he had collateral paper in his office which he was holding for Mrs. Burdick, he should bring it down to the bank and let him (Davidson) examine it; that he might take sufficient of it to pay her note and that he would surrender the note. Immediately after this Burdick went to his office, obtained the notes and took them to the bank. He spread them out on the table for Davidson to take any or all of them as he saw fit. There was some discussion as to the financial responsibility of the makers and at the conclusion of the conversation Davidson gathered up the entire bunch of notes and said, in substance: "Mrs. Burdick is out of this. You owe all this debt anyhow and I will just hold this stuff as collateral to the entire debt." Burdick then told him that he wanted the note (referring to the accommodation note signed by his wife), but Davidson gave him reasons why he did not want to part with the note at that time. He said Mrs. Burdick was out of the deal. He said to the witness, "You have about the limit in this bank. We can not put this in properly as your obligation because you already have enough and the examiner objects to overloading. Mrs. Burdick is good and her note will help the bank out and it will not hurt you any because it is satisfactory as far as you or the bank are concerned." He delivered the notes in reliance on Davidson that they would satisfy Mrs. Burdick's note. Following this transaction, on July 8, 1920, he had another conversation with Davidson, in which he demanded the note, saying that it had caused a lot of trouble and he wanted it delivered to him as Davidson had formerly agreed. But Davidson said "if you will just keep your shirt on now that note will be all right. You know that note, as far as she is concerned, is paid, if you will keep your shirt on. This collateral will soon have income enough to take up the note and there will not be anybody discommoded." The witness testified that he understood from the May transaction that, so far as Mrs. Burdick was concerned, the note was paid, and that, so far as he was concerned, he was still behind the obligation.
On cross-examination under the statute Davidson testified concerning the May transaction substantially as follows: That Burdick came to the bank and wanted to give some other notes for the Emma C. *Page 437 
Burdick note and he told Burdick to bring them down and he would look them over and if there was some paper there that he figured was good they would take it; that he came down and wanted to give other notes in exchange for or payment of the Emma C. Burdick note. He (Burdick) brought the notes to the bank after he had made this proposal.
We are clearly of the opinion that the evidence warrants the inference that the collateral notes were taken by the bank with the distinct understanding that they should satisfy the liability of Emma C. Burdick upon the accommodation note and that they would further stand as collateral to Burdick's indebtedness.
The fact that the defendant, Emma C. Burdick, after the May transaction gave the note in suit in renewal of the accommodation note, is explained in the evidence. The note was causing trouble, Burdick was promising that he would obtain it, but he was unable to do so for the reasons previously indicated, and he did not tell Mrs. Burdick the character of his negotiations with the bank. So far as she knew, she was still liable upon it.
There are some further assignments of error argued in the appellant's brief on the admission and rejection of testimony. It appears that in settling some matters between Burdick and Mrs. Burdick, after the arrangement at the bank in May, Burdick executed a chattel mortgage, part of the consideration of which was that it was to operate as security against the liability of the defendant for the obligation at the bank. The mortgage was offered in evidence but was excluded. It appears, however, that the fact of the giving of the security for the purpose named was admitted. We think there was no error in excluding the chattel mortgage. The plaintiff likewise sought to prove that Burdick, in a suit brought against him by Mrs. Burdick, and tried after the transactions at the bank hereinabove referred to, testified concerning his property and his indebtedness, stating that he was indebted to Emma C. Burdick to the extent of $2,700, and interest since November 1, 1920. This offer was ruled out as immaterial, and we think the ruling was clearly proper. It does appear, however, that counsel, in response to a request, was permitted to state to the court the particular reasons for offering the testimony and that a recess was taken that they might be communicated to the court in the absence of the *Page 438 
jury. The reasons do not appear in the transcript; so the ruling stands as prima facie correct. If the testimony was proper for any purpose, that purpose has not been made to appear.
The plaintiff also attempted to show that in the same action the defendant here had charged that Burdick was indebted to her on a note to the First National Bank (the plaintiff herein) to the extent of $3,000 and that she held security for the same against the personal property of the defendant. The evidence as a whole shows that the defendant was not aware of the arrangements made by her husband with the bank to take care of this obligation; also that he did give to her security against the contingency of her being held upon the obligation, and this, after the arrangements in question had been made. We think these facts were so clearly brought out in the evidence (in fact they were admitted by Burdick, the principal witness), that no prejudice could have resulted to the plaintiff by reason of the exclusion of this paragraph of the complaint in the action between the defendant and her husband. Whatever value attached to this evidence was as an admission and enough was shown to the effect that the defendant continued to treat the obligation as existing that the plaintiff must have had all the benefit such an admission could give. The record shows no prejudicial error.
The judgment appealed from is affirmed.
CHRISTIANSON, Ch. J., and JOHNSON and NUESSLE, JJ., and JANSONIUS, District J., concur.
Mr. Justice BURKE, disqualified, did not participate, Honorable FRED JANSONIUS, Judge of Fourth Judicial District, sitting in his stead. *Page 439